HATTIE BALL, a/k/a Hattie Burrough, a/k/a Hattie Walton, Petitioner-Appellee, *v.* JAMES HAUGHTON, M. D., Respondent-Appellant.

First District (5th Division)   No. 76-1368

Opinion filed May 12, 1978.

Howard T. Savage, Samuel L. Patterson, and Patricia Unsinn, all of Chicago, for appellant.

George F. Archer and Mel Sloan, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Count I of the petition filed in this action sought the registration and enforcement under the Revised Uniform Reciprocal Enforcement of Support Act (Ill. Rev. Stat. 1975, ch. 68, par. 101 *et seq.*) of a foreign support order entered in New York; and count II asked for the registration and enforcement under the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1975, ch. 77, par. 88 *et seq.*) of a foreign judgment entered in California. Respondent's motion to dismiss was granted as to count I but denied as to count II and, after an evidentiary hearing, judgment was entered in favor of petitioner on count II in the amount of $22,816.06. Respondent appeals the judgment and the order denying his motion to dismiss count II. The issues presented for review are: (1) whether this action is barred by the applicable statute of limitations; (2) whether certain evidentiary rulings of the trial court were erroneous; (3) whether the judgment was against the manifest weight of the evidence; (4) whether this action is barred by the equitable doctrine of laches; and (5) whether petitioner has the standing to bring this action. Petitioner has cross-appealed, asserting the court erred (a) in dismissing count I and (b) in its computation of the arrearage which formed the basis of the judgment amount.

It appears that twin daughters (Debra and Denene) were born to petitioner on July 3, 1948, and, as their guardian ad litem, she obtained support decrees in California and New York on their behalf. On January 17, 1950, the Superior Court of the State of California found respondent to be the twins' father and ordered him to pay $60 per month as support to the office of the court, subject to its further order or until the girls reached their legal majority. Shortly afterward, respondent moved to New

York and made one $50 support payment directly to petitioner. No other payments were made until 1958 when, with the assistance of the Los Angeles City Attorney, petitioner sought the registration and enforcement of the California decree in the State of New York. After examining the California petition, summons, and decree, the Domestic Relations Court of the City of New York held a hearing on the matter and, on May 15, 1958, ordered respondent to pay $50 per month as support to the court. Thereafter, in November 1970, respondent became a resident of Illinois and, on May 23, 1975, petitioner brought the instant action.

Her petition sought the registration and enforcement of the New York (count I) and the California (count II) decrees. Pertaining to each count, petitioner alleged that she had been the sole support of Debra and Denene; that respondent has not paid her all amounts due and owing for the support of the twins; that difficulty in ascertaining respondent's whereabouts, illness, and lack of financial resources have hindered her in bringing action to collect the arrearages due her; that at all relevant times, respondent has been gainfully employed and possessed of valuable personal and real property; and that she lacks the financial resources to pay her attorneys' fees; whereas, respondent has adequate resources to assume the responsibility for such fees. Concerning the New York support order, petitioner sought a judgment of arrearage in the amount of $5,200 in addition to attorneys' fees and such other relief as the court may deem equitable. In regard to the California judgment, she sought $13,900 arrearage, plus interest in addition to attorneys' fees and such further relief as the court may deem equitable.

Alleging that his obligation of support terminated on July 3, 1969, when Debra and Denene reached their legal majority, respondent moved (1) to dismiss count I, because the effective date of the Revised Uniform Reciprocal Enforcement of Support Act post-dated the termination of his duty to support the twins and that such act made no provision for the collection of arrearages arising from orders of other jurisdictions or for the allowance of attorneys' fees; and (2) to dismiss count II, because the petition was barred by the applicable statute of limitations (Ill. Rev. Stat. 1975, ch. 83, par. 16). The trial court granted the motion as to count I but denied it as to count II. Thereafter, and pursuant to respondent's request, petitioner filed a verified bill of particulars, stating that in partial satisfaction of the New York and California decrees she had received $1,450 from respondent and that Debra and Denene reached their legal majority on July 3, 1969. Respondent then filed, and the court denied, a motion for declaratory judgment which again raised the statute of limitations as a bar to count II.

At the hearing on count II, petitioner testified that respondent paid $50 directly to her through the mail in 1950 and $1,400 in checks through the

Los Angeles City Attorney from 1956 to 1969, but when apprised of the contents of the New York court records, she indicated that during the latter period she received $2,375 in support of the twins. An actuarial expert called by petitioner then rendered three alternative opinions as to the amount of the arrearage. His first computation assumed a duty to pay $60 monthly from January 15, 1950, through July 3, 1969, against which the $50 was credited. The resulting amount was $13,999 and, when 7% simple interest, computed upon each unpaid installment up to the date of the hearing was added, the total arrearage was brought to $30,068.50. The second computation was accomplished in the same manner, except that $2,375 rather than $50 was credited against the unpaid balance and resulted in a total arrearage of $25,246.75. The third computation assumed a duty to pay $60 monthly from January 15, 1950, through May 30, 1958, and $50 monthly from June 1, 1958, through July 7, 1969, against which was credited payments of $50 and $2,375. The resulting total of principal and interest was computed to be $22,816.06.

The parties then stipulated that respondent admitted under oath he does not recall ever making payments to the clerk of the court of Los Angeles. When petitioner was recalled under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60), she testified that the Los Angeles city attorney was the signatory of support checks received for the benefit of Debra and Denene, and that while in New York City during January 1970, she made a demand upon respondent to remit the arrearage owed her and that, although she was aware that he was in the process of moving to Illinois, she did not know until 1971 that he had actually made such a move.

Petitioner then called a court reporter, who read portions of respondent's discovery deposition disclosing that he had never notified petitioner of his whereabouts and did not reply to the letters which he received from petitioner's attorneys.

During the course of closing argument, respondent's attorney argued that the payment of $2,375 indicated in the New York records underestimated the amount of support actually paid, as petitioner had testified to receiving an unspecified amount in a year not included within those records. Judgment in favor of petitioner was then entered in the amount of $22,816.06.

After this cause was taken under advisement at the close of oral argument, it was suggested of record for the first time that petitioner had died subsequent to the dates on which the notices of appeal and cross-appeal had been filed. Pursuant to the motion of petitioner's attorney, we appointed Debra as special administrator of petitioner's estate for the purpose of defending the appeal and prosecuting the cross-appeal. Ill. Rev. Stat. 1975, ch. 110, par. 54(2); ch. 110A, par. 366(a)(2).

OPINION

Respondent contends the trial court erred in failing to also dismiss count II of the petition, which he argues is barred by the applicable statute of limitations. In their briefs and during oral argument in this court, counsel for both parties confined their comments to the question of whether or not the five year "catch-all" limitation contained in section 15 of "An Act in regard to limitations" (Ill. Rev. Stat. 1975, ch. 83, par. 16) is a bar to the action alleged in count II.

■■ In this regard, it appears that in 1951, the Illinois General Assembly expressly limited the registration of foreign judgments under the newly enacted Uniform Enforcement of Foreign Judgments Act to those "application[s] made within the time allowed for bringing an action on a foreign judgment in this state" (Ill. Rev. Stat. 1975, ch. 77, par. 89), and that such period has long been held to be five years with the running not tolled by a nonresident's absence from the State. Ill. Rev. Stat. 1975, ch. 83, par. 19; *Schemmel v. Cooksley* (1912), 256 Ill. 412, 100 N.E.2d 141; *Davis v. Munie* (1908), 235 Ill. 620, 85 N.E. 943; see also, *Light v. Light* (1957), 12 Ill. 2d 502, 147 N.E.2d 34.

■■ Here, the California judgment of January 17, 1950, for which petitioner sought registration and enforcement in count II, states by its own terms that respondent must remit—not to her but to the office of the court—periodic payments for the support of Debra and Denene until they reach their legal majority. Petitioner, in a verified pleading, admitted they reached legal majority on July 3, 1969, and thereby conclusively established that the last installment accrued on that date. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749; *Burdin v. Jefferson Trust & Savings Bank* (1971), 133 Ill. App. 2d 703, 269 N.E.2d 340.) Furthermore, during the period from January 17, 1950, to July 3, 1969, all parties were nonresidents of Illinois and, as the petition was filed in excess of five years after the last installment had accrued, we believe that the action alleged in count II was barred by the section 15 five-year period of limitation.

More significantly, however, we note that the parties have not discussed the salient fart that while the California judgment imposed a duty on respondent to support Debra and Denene to the extent of $60 monthly, it required that the payments be made to the court and not to petitioner. Thus, respondent's obligation to pay would not operate in petitioner's favor unless she established that she supported the girls when he did not make the payments as ordered. We believe that this circumstance also supports the application of the five year section 15 limitation. It has been held that "where there is an obligation or duty and the receipt of a benefit related to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay." (*Town of Montebello v. Lehr* (1974), 17 Ill. App. 3d 1017, 1021, 309 N.E.2d 231, 234. Accord, *Shaw v.*

*Blessman* (1966), 67 Ill. App. 2d 242, 213 N.E.2d 784.) An action upon such an implied contract must be brought within five years of its accrual and this limitation has been imposed even where the evidence establishing the existence of an implied contract was in written form. (*Knight v. St. Louis, Iron Mountain & Southern Ry. Co.* (1892), 141 Ill. 110, 30 N.E. 543; *Ralph Martin & Co., Inc. v. McCue* (1940), 304 Ill. App. 358, 26 N.E.2d 526.) As stated above, where the duty requires periodic payments, a right of action accrues as each installment becomes due and the period of limitations begins to run on that due date. See *Light v. Light; Schuler v. Schuler* (1904), 209 Ill. 522, 71 N.E. 16.

Here, the California judgment provides that respondent remit periodic payments to the court for the support of the children until they reach their legal majority. In count II, as well as count I, petitioner alleged that she furnished the support for which respondent was liable. It follows, then, that whenever or by whomever his daughters were being supported when he failed to fulfill that duty, respondent received a benefit related thereto, and the law implies a promise on his part to reimburse the supporter. *Town of Montebello v. Lehr.*

Therefore, although petitioner sought in count II to register and enforce the California judgment, her cause of action in effect was a suit to enforce an implied contract for reimbursement for the support she allegedly provided the girls, an action coming within the five-year limitation period.

Thus, for the reasons stated, we conclude that the court erred in denying respondent's motion to dismiss count II of the petition.

Because of this conclusion, it will not be necessary that we review the other issues raised by respondent as to count II. However, in view of the probability of further appeal, we believe that the issues raised on the cross-appeal merit discussion.

Petitioner first contends that the judgment entered in her favor was erroneously inadequate because it was based on the New York decree providing for $50 monthly support. She posits that in the absence of an expressed finding of changed circumstances, the New York court was without power to lower the California judgment for $60 monthly. We do not agree.

The New York order recited the fact that the court heard testimony in addition to considering the submitted California documents. It is the appellant who bears the burden of providing a record sufficient to substantiate alleged error and, to the extent the record is incomplete, it is presumed that the evidence heard by the New York court was sufficient to support its judgment (*Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346.) As petitioner has not provided this court with a report of proceedings or a bystander's report of the New York hearing, we must presume that there was evidence of changed

circumstances presented to that court sufficient to support the modification.

Petitioner next argues the trial court erred in dismissing count I, which sought the registration and enforcement of the New York decree under the Revised Uniform Reciprocal Enforcement of Support Act (the Support Act).

■■ Initially, it should be noted that although the trial court did not state of record a reason for its dismissal of count I, the parties treated it as having resulted because petitioner was represented by private counsel. The Support Act provides that the court may request that petitioner be represented by a public attorney. (Ill. Rev. Stat. 1975, ch. 68, par. 138.) Illinois courts have not yet interpreted this provision, but it has been considered in other jurisdictions.

> "[T]he practical difficulties involved in securing of support by one person from a person residing in another state constitute a valid basis for granting free legal representation in such cases and denying it in cases where both persons are residents of the same state. Besides, in the final analysis, the free legal representation is for the benefit of the public as a whole, and not of the particular dependent person." (*Duncan v. Smith* (Ky. 1953), 262 S.W. 2d 373, 378.)

It has been held that the Support Act does not deny the petitioner's right to engage his own attorney should he so desire. (*Davis v. Davis* (1954), 246 Iowa 262, 67 N.W.2d 566. See also *Peters v. Peters* (1957), 249 Iowa 110, 86 N.W.2d 206.) We consider the reasoning of these cases to be sound and hold that count I of the petition should not have been dismissed on the basis that petitioner was represented by private counsel.

We believe, however, that count I was also barred by the five year limitation period of section 15. Although the General Assembly in its enactment of the Uniform Enforcement of Foreign Judgments Act provided that applications for registration of foreign judgments be made within the time allowed for presenting an action on a foreign judgment in this State (Ill. Rev. Stat. 1975, ch. 77, par. 89), it failed to explicitly so limit applications for registration of foreign support orders under the Uniform Support Act. We do not believe that such an omission connotes a legislative attempt that no limitations period whatsoever would be applicable to the registration of foreign support orders in the light of the language of the section 15 "catch-all" provision:

> "[A]ll civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." Ill. Rev. Stat. 1975, ch. 83, par. 16.

Relying on *Watkins v. Conway* (1966), 385 U.S. 188, 17 L. Ed. 2d 286, 87 S. Ct. 357, petitioner argues that by barring actions for the arrearage of

periodic installments accruing more than five years prior to filing suit if the payments are ordered by the judgment of a sister State, but at the same time allowing an action within 20 years if the payments are ordered by a domestic judgment (*Mueller v. Mueller* (1962), 36 Ill. App. 2d 305, 183 N.E.2d 887), Illinois is in violation of the full faith and credit laws of the Federal Constitution unless it considers the five year limitation tolled until the petitioner knew or should have known that respondent had taken up residency in Illinois. (See *E. J. Korvette v. Esko Roofing Co.* (1976), 38 Ill. App. 3d 905, 350 N.E.2d 10.) We do not agree.

■■ The Oregon Supreme Court, when faced with a similar contention, reasoned that *Watkins v. Conway* did not prohibit as being discriminatory the application of the forum's statute of limitations to an application seeking the registration of a foreign judgment where that judgment, once registered, was accorded the same consideration as a domestic judgment. (*Newhouse v. Newhouse* (1975), 271 Ore. 109, 530 P.2d 848.) We accept this reasoning, and we note that in Illinois once proper application for registration is made and defendant is served, but either defaults or presents no defense at the hearing, the registered judgment is accorded the same status as a domestic support order. (Ill. Rev. Stat. 1975, ch. 68, par. 140.) In view thereof, we find no constitutional impediment to the application of the five year "catch-all" limitation to petitions seeking the registration and enforcement of foreign support orders.

■■ Here, except for respondent's partial payment of the New York support order, petitioner alleged in both counts I and II that she alone supported their daughters and therefore that she was entitled to reimbursement to the extent that she satisfied his obligation. We believe that those allegations are sufficient to establish her standing to bring count I (Ill. Rev. Stat. 1975, ch. 68, pars. 102(b), 102(f), 108); but, as noted above, the five year limitation applied and because her petition was filed more than five years after the last installment's accrual date and neither she nor respondent were Illinois residents at the time any of those payments accrued, we find that the trial court properly dismissed count I.

For the reasons stated, the judgment in favor of petitioner and against respondent is reversed, and this cause is remanded with directions to enter an order dismissing count II of the petition; the order dismissing count I is affirmed.

Affirmed in part.

Reversed in part and remanded with directions.

LORENZ and WILSON, JJ., concur.